UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLORADO
                         Judge Robert E. Blackburn

Civil Action No. 10-cv-01485-REB

CLYDE E. MEGGINSON,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

## ORDER AFFIRMING COMMISSIONER

**Blackburn, J.**

    The matter before me is plaintiff's **Complaint** [#1][1] filed June 24, 2010, seeking review of the Commissioner's decision denying plaintiff's claims for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.* I have jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g). The matter has been fully briefed, obviating the need for oral argument. I affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

    Plaintiff alleges that he is disabled as a result of a stroke with residual right-side numbness and diabetes mellitus. After his application for disability insurance benefits was denied, plaintiff requested a hearing before an administrative law judge. This hearing was held on April 14, 2008. At the time of the hearing, plaintiff was 61 years old. He has tenth grade education and past relevant work experience as a auto

---

[1] "[#1]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

mechanic and a convenience store clerk. He has not engaged in substantial gainful activity since September 1, 2003, his alleged date of onset.

The ALJ found that plaintiff was not disabled and therefore not entitled to disability insurance benefits. Although the medical evidence established that plaintiff suffered from severe impairments, the judge concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations. The ALJ found that plaintiff had the residual functional capacity to perform light work that did not require exposure to workplace hazards. As this finding did not preclude plaintiff's past relevant work as a convenience store clerk, the ALJ found him not disabled at step four of the sequential evaluation. Plaintiff appealed this decision to the Appeals Council. The Council affirmed. Plaintiff then filed this action in federal court.

## II. STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act only if his physical and/or mental impairments preclude him from performing both his previous work and any other "substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2). "When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination." **Campbell v. Bowen**, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)). However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act. To be disabling, the

2

claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. **See Kelley v. Chater,** 62 F.3d 335, 338 (10th Cir. 1995).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled:

> 1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.
>
> 2. The ALJ must then determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.
>
> 3. The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.
>
> 4. If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform his past work despite any limitations.
>
> 5. If the claimant does not have the residual functional capacity to perform her past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

20 C.F.R. § 404.1520(b)-(f). **See also Williams v. Bowen** 844 F.2d 748, 750-52 (10th Cir. 1988). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. **Bowen v. Yuckert**, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987). The burden then shifts to the Commissioner to show that the claimant is capable of performing work in the national economy. **Id.** A finding that

the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. ***Casias v. Secretary of Health & Human Services***, 933 F.2d 799, 801 (10th Cir. 1991).

Review of the Commissioner's disability decision is limited to determining whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence. ***Hamilton v. Secretary of Health and Human Services***, 961 F.2d 1495, 1497-98 (10th Cir. 1992); ***Brown v. Sullivan***, 912 F.2d 1194, 1196 (10th Cir. 1990). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. ***Brown***, 912 F.2d at 1196. It requires more than a scintilla but less than a preponderance of the evidence. ***Hedstrom v. Sullivan***, 783 F.Supp. 553, 556 (D. Colo. 1992). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." ***Musgrave v. Sullivan***, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." ***Thompson v. Sullivan***, 987 F.2d 1482, 1487 (10th Cir. 1993). Although a reviewing court should meticulously examine the record, it may not reweigh the evidence or substitute its discretion for that of the Commissioner. ***Id.***

### III. LEGAL ANALYSIS

Plaintiff maintains that the ALJ failed to afford proper weight to the opinion of his treating physician and improperly discredited his subjective reports of pain. Finding no reversible error in the ALJ's decision, I affirm.

Plaintiff's primary argument on appeal is that the ALJ erred in discrediting the

4

opinion of Dr. Chetana Shastri, his treating physician. The opinion of a treating source is entitled to controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record." 20 C.F.R. § 404.1527(d)(2); *see also* ***Watkins v. Barnhart***, 350 F.3d 1297, 1300 (10th Cir. 2003). A treating source opinion cannot be rejected absent good cause for specific and legitimate reasons clearly articulated in the hearing decision. ***Watkins***, 350 F.3d at 1301. Good cause may be found where the treating source's opinion is brief, conclusory, or unsupported by the medical evidence. ***Frey v. Bowen***, 816 F.2d 508, 513 (10th Cir. 1987). Even when a treating source opinion is not given controlling weight, it is still entitled to deference "and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.972." **Social Security Ruling** 96-2p, 1996 WL 374188 at *4 (SSA July 2, 1996). ***See also Langley v. Barnhart***, 373 F.3d 1116, 1119 (10th Cir. 2004).[2] Despite the deference usually afforded treating source opinions, however, they are not sacrosanct, and "[i]n appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources." **Social Security Ruling**

---

[2] These factors include:

1. the physician's length of treatment of the claimant;
2. the physician's frequency of examination;
3. the nature and extent of the treatment relationship;
4. the support of the physician's opinion afforded by the medical evidence of record;
5. the consistency of the opinion with the record as a whole; and
6. the specialization of the treating physician.

20 C.F.R. § 404.1527(d)(2)-(6).

5

96-6p, 1996 WL 374180 at *3 (SSA July 2, 1996).

Dr. Shastri had seen plaintiff only twice prior to authoring the Multiple Impairment Questionnaire form that constitutes the basis of her allegedly controlling opinion.[3] At the first visit, on September 13, 2007, Dr. Shastri noted a host of impairments, including diabetes, hypertension, high cholesterol, and gastrointestinal reflux. Plaintiff's diabetes was described as "not well controlled" but he "adamantly refuse[d] insulin." (Tr. 402, 404.) Plaintiff complained of "mild" right sided numbness and right shoulder pain, and took Etodolac for pain association with bilateral degenerative joint disease in his knees.[4] (Tr. 400.)

Dr. Shastri did not see plaintiff again until April 14, 2008, mainly to refill his various prescriptions and give Dr. Shastri the disability form to fill out. (Tr. 574.) Dr. Shastri's notes show that plaintiff's multiple medical conditions were stable, and he was continued on most of his existing medications. (Tr. 578.) Although Dr. Shastri took plaintiff's vital signs and ordered blood testing, nowhere do the notes indicate that she performed any sort of functional testing on plaintiff. Nevertheless, in completing the disability form, Dr. Shastri suggested that plaintiff could sit, stand, and walk for no more

---

[3] Although not a reason cited by the ALJ for discounting Dr. Shastri's opinion, her relatively brief tenure as a treating physician makes her opinion less probative than it would be had her treatment relationship with plaintiff been of longer duration. Indeed, she had seen plaintiff only once more than any of the consultative examiners who opined on plaintiff's functional limitations, and there is no indication from her treatment notes that she ever performed any sort of actual functional analysis of his abilities. *See* 20 C.F.R. § 404.1527(d)(2)(i) (("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion."). *See also* 20 C.F.R. § 404.1502 (treating source is one with whom claimant has "ongoing treatment relationship," i.e., that claimant sees source "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [his] medical condition(s)").

[4] During a visit to the emergency room in February, 2008, plaintiff reported that this same medication "usually help[ed]" his right shoulder "tight[ness.]." (Tr. 582.)

than one hour each per day and would require to change positions every 30 to 60 minutes and restricted him to lifting less than 5 pounds on the right and no more than 10 pounds on the left. (Tr. 412-413.)

I cannot find that the ALJ erred in discrediting these opinions as unsupported and/or contradicted by the other medical evidence of record. Contrary to plaintiff's assertion, the ALJ did not simply dismiss Dr. Shastri's opinion without analysis, but carefully examined each of her suggested limitations, referring to and discussing other evidence of record that undermined her relative brief and conclusory opinions. (**See** Tr. 20-21.) Nor was the ALJ required to recite as a litany each and every factor contemplated by 20 C.F.R. § 1527(d). **See Mestas v. Astrue**, 2010 WL 3604395 at *3 (D. Colo. Sept. 7, 2010). An ALJ's suggestion that he considered all such factors is sufficient to substantiate the conclusion that he discharged his responsibility in this regard, at least insofar as the record suggests no reason to dispute it. **See Cox v. Apfel**, 2000 WL 1472729 at * 8 (D. Kan. Feb. 24, 2000) (citing **Hamilton v. Secretary of Health & Human Services**, 961 F.2d 1495, 1498-99 (10th Cir. 1992)). Such is the case here.

Similarly, the ALJ's determination not to accept all the limitations suggested by each of the three consultative examiners who offered opinions in this case was not error. It is the province of the ALJ to resolve conflicts in the evidence. **Reyes v. Bowen**, 845 F.2d 242, 245 (10th Cir. 1988); **Gleason v. Apfel**, 1999 WL 714172 at *4 (D. Kan. Sept. 1, 1999). He did not transgress the proper boundaries of his role in that regard in vetting the somewhat contradictory evidence before him here. (**See** Tr. 18-

20.)[5]

Finally, plaintiff argues that the ALJ improperly discredited his subjective complaints of pain and functional limitations. "[C]redibility determinations 'are peculiarly the province of the finder of fact,' and should not be upset if supported by substantial evidence." *White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2001) (quoting *Kepler v. Chater*, 68 F.3d 387, 390-91 (10th Cir. 1995)). The ALJ gave clear, specific, and legitimate reasons why he did not find plaintiff's testimony entirely credible, all of which were appropriately considered and substantiated by the medical evidence of record. (*See* Tr. 17-21.) Reversal therefore is not warranted.

## IV.  ORDERS

**THEREFORE IT IS ORDERED** that the conclusion of the Commissioner through the Administrative Law Judge that plaintiff was not disabled is **AFFIRMED**.

Dated September 20, 2011, at Denver, Colorado.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge

---

[5] Likewise, the ALJ was required only to consider, not necessarily to accept, the favorable disability determination issued by the Veterans Administration in plaintiff's case. (*See* Tr. 637.) *See also Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) ("Although another agency's determination of disability is not binding on the Social Security Administration, it is evidence that the ALJ must consider and explain why he did not find it persuasive.") (internal citation omitted). This he did, dismissing the VA's conclusions as not supported by the treatment notes and giving specific reasons for that conclusion. (Tr. 21.) There was no reversible error in that conclusion.

8